FILED

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

2013 NOV 19 ₽ 4: 05

U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

CA 13- 747 M ∠

SCOTT PHILLIPS, individually and      :
on behalf of all others similarly     :
situated, Plaintiff                   :
                                      :
        vs.                           :         C.A. NO.
                                      :
COSTA, INC., DAVID G. WHALEN,         :
RUSSELL A. BOSS; BERNARD A.           :
BUONANNO, JR., JACOB C. GAFFNEY:
DWAIN L. HAHS, HARLEN M. KENT  :
ANDREW J. PARSONS, FRANCES P.   :
PHILIP, ESSILOR INTERNATIONAL,  :
S.A., and GWH ACQUISITION SUB,  :
INC., Defendants                :

## CLASS ACTION COMPLAINT

Plaintiff Scott Phillips ("Plaintiff"), individually and on behalf of all other

similarly situated shareholders of Costa, Inc. ("Costa" or the "Company") respectfully

brings this class action for the breach of fiduciary duties and the aiding and abetting of

those breaches against the herein-named defendants. Upon information and belief,

Plaintiff alleges the following:

## I.    SUMMARY OF THE ACTION

1.      This is a stockholder class action brought by Plaintiff individually and on

behalf of the public shareholders of Costa against Costa's Board of Directors (the

"Board" or the "Individual Defendants"), Essilor International SA ("Essilor"), and

GWH Acquisition Sub Inc., ("Merger Sub"), arising out of Defendants' breach of

1

fiduciary duties, and/or aiding and abetting of those breaches, in connection with the Board's decision to sell Costa to Essilor and Merger Sub at a substantial discount *via* an inherently unfair process (the "Proposed Transaction").

2.     On November 8, 2013, Essilor and the Company announced an Agreement and Plan of Merger dated November 7, 2013 (the "Merger Agreement"), under which Essilor, through its wholly owned subsidiary Merger Sub, will acquire all of the outstanding shares of Costa in an all-cash transaction for $21.50 per share (the "Merger Consideration"). The Company has stated that the Proposed Transaction has an enterprise value of approximately $270 million. The Board has breached their fiduciary duties by agreeing to the Proposed Transaction for inadequate consideration. As described in more detail below, given Costa's recent strong performance as well as its future growth prospects, the consideration shareholders will receive undervalues the Company.

3.     The Proposed Transaction is the product of a fundamentally flawed process that fails to maximize shareholder value, in breach of Defendants' fiduciary duties, and is designed to ensure the acquisition of Costa by Essilor on terms preferential to Essilor and Costa's Board members, but detrimental to Plaintiff and other public shareholders of the Company. Specifically, the Merger Consideration significantly undervalues the Company and the Merger Agreement unlawfully binds

the parties to unfair terms of the Proposed Transaction and impermissibly deters potential topping bids.

4.    First, the Merger Consideration significantly undervalues the Company and is merely an attempt by Essilor to acquire Costa before it fully capitalizes on the recent business decision to shed the declining and unprofitable Cross Accessory Division (which was completed in September 2013) and focus on the rapidly growing and profitable Costa business (formerly called the Cross Optical Group).  On October 30, 2013, the Company released its Third Quarter 2013 Financial Results, announcing increases in both the sales of sunglasses and accessories and was confident that the Company's divestiture of its Cross Accessory Division will continue propelling growth through the fourth quarter and into 2014.  Defendants timed the Proposed Transaction to sell this valuable company for a bargain while creating the appearance of a price premium to the Company's shareholders.

5.    Furthermore, the Merger Consideration does not compensate Costa shareholders for the synergistic value that Essilor and its shareholders will gain from the Proposed Transaction.  As the Merger Consideration does not properly value Costa and will not adequately compensate Company shareholders for their investment, any "premium" Defendants may tout is illusory.

3

6.     Moreover, certain Costa directors who voted to approve the Proposed Transaction suffer from incurable conflicts of interest that hinder their ability to faithfully exercise their fiduciary duties owed to Costa and its shareholders.

7.     Exacerbating matters, Defendants have attempted to unlawfully bind the Company's shareholders to the unfair Proposed Transaction by including several provisions in the Merger Agreement that operate to protect the deal and deter any potential topping bids (the "Deal Protection Devices"). Specifically, pursuant to the Merger Agreement, Defendants agreed to: (i) a strict no-solicitation provision that prevents the Company from soliciting other potential acquirers or even in continuing discussions and negotiations with potential acquirers; (ii) a provision that provides Essilor with four (4) business days to match any competing proposal in the event one is made; and (iii) a provision that requires the Company to pay Essilor a termination fee of $8,965,500 in order to enter into a transaction with a superior bidder. These provisions substantially and improperly limit the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of Costa.

8.     Simply put, the Proposed Transaction is the product of a fundamentally flawed process that is designed to unlawfully divest Costa's public shareholders of their equity holdings and end the Company's independent existence without providing the Company and its shareholders the maximized value to which they are entitled.

4

Defendants know Costa will continue to produce substantial revenue and earnings, yet have failed to garner adequate consideration for the Company's shareholders to compensate for their being cashed out of the opportunity to enjoy such financial success.  Herein, Plaintiff alleges that the Individual Defendants have breached their fiduciary duties of loyalty, due care, independence, good faith and fair dealing, and Costa, Essilor and Merger Sub have aided and abetted such breaches by Costa's officers and directors.

9.     Plaintiff seeks to enjoin the Proposed Transaction unless and/or until Defendants cure their breaches of fiduciary duty.

II.     **PARTIES**

10.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Costa.  Plaintiff is a resident of Pennsylvania.

11.     Costa is a corporation organized and existing under the laws of the State of Rhode Island.  It maintains its principal executive offices at 24 Albion Road, Suite 330, Lincoln, RI 02865.  Costa common stock is listed and traded on the NASDAQ Stock Exchange under the ticker symbol "ATX."  Costa is named as a defendant solely for the purpose of providing full and complete relief.

12.     Defendant David G. Whalen ("Whalen") has been the President, Chief Executive Officer, and a director of the Company since 1999.  Whalen is a resident of Rhode Island.

5

13.    Defendant Russell A. Boss ("Boss") has been a director of the Company since 1962. Boss is a resident of Rhode Island.

14.    Defendant Bernard V. Buonanno, Jr. ("Buonanno") has been a director of the Company since 1986. Buonanno is a resident of Rhode Island.

15.    Defendant Jacob C. Gaffey ("Gaffey") has been a director of the Company since 2011. Gaffey is a resident of Rhode Island.

16.    Defendant Dwain L. Hahs ("Hahs") has been a director of the Company since 2010. Hahs is a resident of Missouri.

17.    Defendant Harlan M. Kent ("Kent") has been a director of the Company since 2008. Kent is a resident of Connecticut.

18.    Defendant Andrew J. Parsons ("Parsons") has been a director of the Company since 2001. Parsons is a resident of Florida.

19.    Defendant Frances P. Philip ("Philip") has been a director of the Company since 2011. Philip is a resident of Maine.

20.    Defendants referenced in ¶¶ 12 through 19 are collectively referred to as the "Individual Defendants" or the "Board."

21.    Defendant Essilor is a French corporation with its headquarters located in Charenton-le-Pont, France. Essilor produces ophthalmic lenses along with ophthalmic optical equipment. Essilor stock is listed and traded on the Euronext Paris Stock Exchange under the symbol "EI."

22.     Defendant Merger Sub is a Rhode Island corporation wholly owned by Essilor that was created for the purposes of effectuating the Proposed Transaction.

## III.   JURISDICTION AND VENUE

23.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.   The Proposed Transaction is valued at $270 million and the inadequate Merger Consideration deprives Plaintiff and other public shareholders of the Company of at least $75,000.00 in value related to their holdings.   Plaintiff is a citizen of Pennsylvania and no defendant is a citizen of Pennsylvania.

24.     This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

25.     Venue is proper in this district because the Company is incorporated and headquartered in this district.

## IV.   THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

26.     By reason of Individual Defendants' positions with the Company as officers and/or directors, they are in a fiduciary relationship with Plaintiff and the other public shareholders of Costa and owe them, as well as the Company, a duty of care, loyalty, good faith, candor, and independence.

27.     To comply with their fiduciary duties, the Individual Defendants may not take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     favors themselves or will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

(c)     adversely affects their duty to search for and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

(d)     will provide the Individual Defendants with preferential treatment at the expense of, or separate from, the public shareholders.

28.     In accordance with their duties of loyalty and good faith, the Individual Defendants are obligated to refrain from:

(a)     participating in any transaction where the Individual Defendants' loyalties are divided;

(b)     participating in any transaction where the Individual Defendants receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)     unjustly enriching themselves at the expense or to the detriment of the public shareholders.

29.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary duties, including their duties of care, loyalty, good faith, candor, and independence owed to Plaintiff and other public shareholders of Costa.

## V.     FURTHER SUBSTANTIVE ALLEGATIONS

### A.     Company Background and its Poise for Further Success

30.     Costa is a premium sport sunglasses company that owns and manages the Costa and Native Eyewear brands. The Costa brand is known best for its premium sport sunglasses tailored to aquatic sports enthusiasts and is rapidly expanding into prescription sunglasses and sports apparel. The Native Eyewear brand is also rapidly expanding to becoming the brand of choice for mountain locals.

31.     Costa is the successor company of A.T. Cross ("Cross"). Cross was founded in 1846 and traditionally sold writing instruments. In 2003, Cross began to move into the sunglasses market, acquiring the Costa del Mar brand. In 2008, Cross continued this expansion, acquiring the Native Eyewear brand. In September 2013, because of outstanding growth of its sunglasses business, Cross completed the sale of its writing instruments accessory division and the Cross name for $60 million in cash, and the Company changed its name to Costa, Inc.

32.     Following this streamlining of its business, the Company is well-positioned to continue its growth in the sunglasses market, particularly, as its

9

sunglasses business has continually grown and continually earned a profit over the past two years, whereas its writing instrument business continually saw lower revenues and negative operating incomes over that same period.

33. During the 2012 fiscal year, the Company's sunglasses business had over $83 million in sales, an increase of 14.9% from 2011. In contrast, the Company's writing instrument business sales fell 4.8% from 2011 to 2012. During 2012, the Company also saw its sunglasses business have an operating income of $13.4 million, an increase of approximately 24% from 2011, whereas its writing instrument division lost approximately $171,000.

34. This split between the Company's sunglasses and writing instrument business continued through the first three quarters of 2013. For the quarter ended March 30, 2013, the Company's sunglasses business saw an increase in sales of 19.1% from the same quarter in 2012, with a positive operating income of approximately $3.7 million. In contrast, the Company's writing instrument business had a decrease in sales of 6.2% from the same quarter in 2012, and had a negative operating income of $1.1 million.

35. The divergent paths continued through the quarter ended June 29, 2013. During this quarter the Company's sunglasses business saw an increase in sales of 17.9% from the same quarter in 2012, with a positive operating income of approximately $7.2 million. Indeed, the performance of the Company's sunglasses business was such

that Defendant Whalen stated that it "delivered a record performance demonstrating that the strategies we have put in place to build our sunglass business are working." However, just as the sunglasses business continued to grow, the writing instrument business continued to constrict and lose money, seeing a decrease in sales of 1.1% from the same quarter in 2012, with a negative operating income of approximately $2.4 million.

36.     The Company, recognizing that the writing instrument business was a drag on its finances, entered an agreement to sell the business on July 15, 2013, for $60 million in cash, closing the sale on September 6, 2013. At the time of the sale's closing, the writing instrument business had a negative operating income of approximately $395,000 for the quarter ended September 28, 2013, excluding $2.9 million in losses related to the sale. The writing business also only had sales of approximately $12.4 million, whereas it had sales of approximately $24 million in the same quarter in 2012. In contrast to the poor performance of the writing instrument business, the Company's sunglasses business continued its success through the quarter, with a positive operating income and an increases in sales of 26.3% from the same quarter in 2012.

37.     Yet, rather than permitting the Company's shares to trade freely and allowing its public shareholders to reap the benefits of the Company's increasingly positive long-term prospects, the Individual Defendants have acted for their personal

benefit and the benefit of Essilor, and to the detriment of the Company's public shareholders by entering into the Merger Agreement.

## B.   Defendants Announce the Unfair Proposed Transaction for Inadequate Consideration

38.   In a press release dated November 8, 2013, the Company announced that it had entered into a merger agreement with Essilor pursuant to which Essilor, through Merger Sub, will acquire all of the outstanding shares of the Company for $21.50 per share.

39.   Given the strong performance of the Company's sunglasses business, the recent sale of the Company's underperforming writing instrument business, and its position for continued growth by focusing solely on its strong and growing sunglasses business, the Proposed Transaction consideration is inadequate and significantly undervalues the Company.

40.   The Proposed Transaction provides a premium of just 7.6% based on the closing price of $19.98 on November 7, 2013.

41.   Further, a Wall Street analyst had a price target of $29 per share before the Proposed Transaction was announced.  Using the data provided by three separate brokers, the mean price target was $25.67 and the median target was $27, both well above the price offered by Essilor.

42.   Based on the Third Quarter 2013 financial results, Costa's revenue increased 25% year to year, and its Earnings Before Interest, Taxation, Depreciation, and

12

Amortization (EBITDA) at an even greater 50% rate over the same period, propelled by the shift in business focus. Yet, despite this impressive growth, the Individual Defendants have determined to sell the Company for a valuation that is well below the current trading multiples of comparable consumer apparel companies.

43.     The Essilor bid values the Company at approximately 17x Enterprise Value (EV)/EBITDA. This valuation represents a deep discount, particularly when compared to the comparable Acquisition transaction of American sunglasses manufacturer Oakley by Luxottica Group in 2007. In that deal, Luxottica valued Oakley with an 18.8x multiple, nearly two turns higher than the valuation assigned by Essilor to Costa.

44.     Additionally, the valuation fails to account for the disproportionate effect that costs related to being a public company have on the EBITDA of a small company like Costa.

45.     These failures, among others, are well-known in the investment community, as Dr. Hugh Akston, an analyst for the financial website *Seeking Alpha* published an analysis of the Proposed Transaction on November 11, 2013 highlighting the "paltry premium" and inadequate consideration.

46.     In addition, the Proposed Transaction consideration fails to adequately compensate Costa's shareholders for the significant synergies created by the merger. In

the November 8, 2013 press release announcing the Proposed Transaction, Defendant Whalen recognized the potential synergies, stating that:

> We are delighted to be joining forces with the world leader in optics. Over the past decade, as the terrific Costa management team has worked to make customers and consumers more aware of the features and benefits offered by the Costa brand, our business has grown rapidly. As a member of the Essilor family, we will have access to a deep pool of world class resources including technology and distribution that will drive our continued growth both in the United States and the global marketplace.

47.     In a statement on the Proposed Transaction, Hubert Sagnières, Essilor's Chairman and Chief Executive Officer said, "[t]he high quality sunglasses and prescription sun lens segment offers high potential given its low penetration rate."

48.     Furthermore, since the announcement of the Proposed Transaction on November 8, 2013, the Company's stock has consistently traded above the Merger Consideration, reaching a high of $22.15 on November 13, 2013 and closing in the range of $21.51 to $22.02 between November 8, 2013 and November 18, 2013. This premium trading is indicative of the market's displeasure with the Merger Consideration and the widespread belief that the transaction undervalues the Company.

49.     Yet, despite the significant synergies and current and future profit inherent in the transaction for Essilor being obvious to the acquirer, the Individual Defendants failed to secure a fair price for the Company, either for the intrinsic value of its assets or the value of the Company's assets to Essilor. Accordingly, the Proposed Transaction consideration is inadequate and grossly undervalues the Company. As a

14

result, Plaintiff and other public shareholders of the Company have been deprived of greater than $75,000 in value.

C.     **The Preclusive Deal Protection Devices**

50.     In addition, as part of the Merger Agreement, Defendants agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and ensure that no competing offers will emerge for the Company.

51.     Section 6.1 of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting interest from other potential acquirers in order to procure a price in excess of the amount offered by Essilor.  Section 6.1(a)(ii) demands that the Company terminate any and all prior or on-going discussions with other potential acquirers.

52.     Pursuant to § 6.1(a) of the Merger Agreement, should an unsolicited bidder submit a competing proposal, the Company must notify Essilor of the bidder's identity and the terms of the bidder's offer. Thereafter, § 6.1(b) demands that should the Board determine to enter into a superior competing proposal, it must grant Essilor four (4) business days in which the Company must negotiate in good faith with Essilor (if Essilor so desires) and allow Essilor to amend the terms of the Merger Agreement to make a counter-offer so that the competing proposal no longer continues to constitute a superior proposal.  In other words, the Merger Agreement gives Essilor access to any

rival bidder's information and allows Essilor a free right to top any superior offer simply by matching it. Accordingly, no rival bidder is likely to emerge and act as a stalking horse, because the Merger Agreement unfairly assures that any "auction" will favor Essilor and piggy-back upon the due diligence of the foreclosed second bidder.

53.     The Merger Agreement also provides that a termination fee of $8,965,500 must be paid to Essilor by Costa if the Company decides to pursue the competing offer, thereby essentially requiring that the competing bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer.

54.     Moreover, in connection with the Proposed Transaction, certain members of Costa's directors and executive officers, as well as certain members of their families and other affiliates, who collectively own approximately 100% of Class B common stock and approximately 34% of the outstanding Class A and Class B common shares, have entered into voting agreements to vote in favor of the Proposed Transaction with Essilor and against any third party acquisition proposal (the "Voting Agreements"). Accordingly, 100% of Costa's Class B stock and 34% of all of Costa's common stock is already "locked up" in favor of the Proposed Transaction.

55.     Ultimately, these preclusive deal protection provisions illegally restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The circumstances under which the Board may respond to an unsolicited written bona fide

proposal for an alternative acquisition that constitutes or would reasonably be expected

to constitute a superior proposal are too narrowly circumscribed to provide an effective

"fiduciary out" under the circumstances.

**D.     Costa's Directors and Officers Stand to Receive Unique Material Benefits in the Proposed Transaction Not Available to the Company's Public Shareholders**

56.     Rather than negotiate a transaction that was in the best interests of Costa's

shareholders, the conflicted Board and executive management disloyally put their own

financial interests ahead of the Company's shareholders' interests.

57.     For example, Defendant Whalen, in entering into the Voting Agreement,

has pledged his 533,823 shares of Company stock to Essilor in addition to negotiating

an Agreement of Termination of Amended and Restated Executive Agreement with the

Company, which provides to him a lump sum cash amount of $3,307,500 upon the

closing of the Merger.  Combining this golden parachute with the consideration he

stands to receive from his shares, Defendant Whalen is in position to reap a windfall of

nearly $15 million; money that would not be available had the Board not endeavored to

sell the Company to Essilor.

58.     In addition to Defendant Whalen, the Company's executive officers also

stand to make lucrative gains at the detriment of Costa shareholders.  As illustrated by

the chart below, these executives are receiving a windfall that they would not otherwise

enjoy if the Company were to remain a standalone entity.

17

| | Position | Lump Sum Cash Payment | Number of Shares Committed to Voting Agreement | Merger Consideration | TOTAL |
|---|---|---|---|---|---|
| Kevin F. Mahoney | President | $676,425 | 165,332 | $3,554,638 | $4,231,063 |
| Charles R. MacDonald | Chief Financial Officer | $850,000 | 243,917 | $5,244,216 | $6,094,216 |
| Tina C. Benik | Vice President, legal and Human Resources and Corporates Secretary | $535,500 | 77,513 | $1,666,530 | $2,202,030 |

59.     Thus, while the Proposed Transaction is providing Costa shareholders with inadequate consideration, it is providing a financial windfall to the Company's management that they would not otherwise receive.

60.     Furthermore, pursuant to the Merger Agreement, stock options and restricted stock will no longer be subject to their restrictions and will be converted into a right to receive the Merger Consideration, creating a financial windfall for the Individual Defendants that is not being equally shared by the Company's minority public stockholders.

61.     Simply put, the Proposed Transaction is the product of a fundamentally flawed process that is designed to unlawfully divest Costa's public shareholders of their equity holdings in exchange for an inadequate Merger Consideration and end the Company's independent existence.  Defendants know Costa will continue to produce substantial revenue and earnings for Essilor, yet have engaged in a flawed sales process

that detrimentally leaves the minority public shareholders of Costa with less than adequate consideration, guaranteeing that they will not enjoy the future financial success of the Company they have loyally invested in. Herein, Plaintiff alleges that the Proposed Transaction is being accomplished by deception, illegality, and in breach of Defendants' fiduciary duties.

62.     Unless enjoined by this Court, Defendants will continue to breach and/or aid the breaches of fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Transaction, which will deprive Class members of a fair and honest sales process, all to the irreparable harm of Plaintiff and the Class.

63.     Plaintiff and other members of the Class have no adequate remedy at law.

## VI.     CLASS ALLEGATIONS

64.     Plaintiff brings this action individually and as a class action on behalf of all holders of Costa stock who are being, and will be, harmed by Defendants' actions described herein (the "Class").

65.     Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, or affiliated with, any Defendants.

66.     The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. According to the Merger Agreement, as of November 6, 2013,

approximately 11.4 million shares of Class A common stock and approximately 1.8 million shares of Class B common stock were represented by the Company as outstanding. All members of the Class may be identified from records maintained by Costa or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

67. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following:

(a) whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and other members of the Class, in connection with the Proposed Transaction;

(b) whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and the other members of the Class, in connection with the Proposed Transaction;

(c) whether the Individual Defendants have breached any of their other fiduciary duties to Plaintiff and other members of the Class in connection with the Proposed Transaction, including the duties of good faith, diligence, honesty, and fair dealing;

20

(d)    whether the Individual Defendants have breached their fiduciary duties of candor to Plaintiff and the other members of the Class in connection with the Proposed Transaction by failing to disclose all material information upon which they are able to make an informed decision about whether to vote their shares in favor of the Proposed Transaction;

(e)    whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other strategic alternatives including offers from interested parties for the Company or its assets;

(f)    whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated; and

(g)    whether Costa, Essilor, and Merger Sub are aiding and abetting the wrongful acts of the Individual Defendants.

68.    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

69.    Plaintiff is an adequate representative of the Class, has retained competent counsel experience in litigation of this nature, and will fairly and adequately protect the interests of the Class.

70.    The prosecution of separate actions by individual members of the Class might create a risk of inconsistent or varying adjudications with respect to individual

members of the Class, which could establish incompatible standards of conduct for Defendants.

71. Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

72. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class a whole.

## CLAIMS FOR RELIEF

## COUNT I
## Breach of Fiduciary Duty
## (Against All Individual Defendants)

73. Plaintiff repeats and realleges each allegation as though fully set forth herein.

74. Defendants have knowingly and recklessly and in bad faith breached their fiduciary duties of care, loyalty, candor, good faith, and independence owed to the public shareholders of Costa and have acted to put the interests of themselves and Essilor ahead of the interests of Costa's shareholders.

75. By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, knowingly or recklessly and in bad faith are attempting to unfairly deprive Plaintiff and other

22

members of the Class of the true value of their investment in Costa and the ability to participate in the future growth of the Company.

76.     As demonstrated by the allegations above, Defendants knowingly or recklessly failed to exercise the care required, and breached their duties of loyalty, good faith, candor, and independence owed to the shareholders of Costa because, among other reasons, they failed to:

(a)     fully inform themselves of the market value of Costa before entering into the Proposed Transaction;

(b)     exercise valid business judgment in connection with Proposed Transaction;

(c)     act in the best interests of the public shareholders of Costa common stock;

(d)     maximize shareholder value;

(e)     obtain the best financial and other terms when the Company's independent existence will be terminated by the Proposed Transaction;

(f)     disclose all material information necessary for Costa's shareholders to cast an informed vote; and

(g)     act in accordance with their fiduciary duties of good faith, due care, loyalty, and candor.

23

77.     By reason of the foregoing acts, practices, and course of conduct, Defendants have knowingly or recklessly and in bad faith failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

78.     Unless enjoined by this Court, Defendants will continue to knowingly or recklessly and in bad faith breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Transaction, which will exclude the Class from the maximized value they are entitled to, all to the irreparable harm of Plaintiff and the Class.

79.     As a result of Defendants' unlawful actions, Plaintiff and the other members of the Class will be irreparably harmed in that they will not receive the real value of their equity ownership of the Company.  Unless the Court enjoins the Proposed Transaction, Defendants will continue to knowingly or recklessly, and in bad faith, breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

80.     Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury, which Defendants' actions threaten imminently to inflict.

81.     Plaintiff seeks to obtain a non-pecuniary benefit for the Class in the form

of injunctive relief against the Individual Defendants.

## COUNT II
## Aiding and Abetting
## (Against Costa, Essilor, and Merger Sub)

82.     Plaintiff repeats and realleges each allegation as though fully set forth

herein.

83.     Costa, Essilor, and Merger Sub are sued herein as aiders and abettors of

breaches of fiduciary duties outlined above by the Individual Defendants.

84.     The Individual Defendants breached their fiduciary duties of good faith,

loyalty, due care, and candor owed to Costa shareholders by failing to:

(a)     fully inform themselves of the market value of Costa before

entering into the Proposed Transaction;

(b)     act in the best interests of the public shareholders of Costa common

stock;

(c)     maximize shareholder value;

(d)     obtain the best financial and other terms when the Company's

independent existence will be materially altered by the Proposed Transaction;

(e)     disclose all material information necessary for shareholders to cast

an informed vote on the Proposed Transaction; and

(f)     act in accordance with their fundamental duties of good faith, due care, candor and loyalty.

85.     Such breaches of fiduciary duties could not and would not have occurred but for the conduct of Costa, Essilor, and Merger Sub, which, therefore, aided and abetted such breaches *via* entering into the Proposed Transaction with Costa.

86.     Costa, Essilor, and Merger Sub had knowledge that it was aiding and abetting the Individual Defendants' breach of their fiduciary duties.

87.     Costa, Essilor, and Merger Sub rendered substantial assistance to the Individual Defendants in their breach of their fiduciary duties.

88.     As a result of the conduct of Costa, Essilor, and Merger Sub aiding and abetting the Individual Defendants' breaches of fiduciary duties, Plaintiff and the other members of the Class have been and will be damaged in that they have been and will be prevented from obtaining a fair price for their shares.

89.     As a result of the unlawful actions of Costa, Essilor, and Merger Sub, Plaintiff and the other members of the Class will be irreparably harmed in that they will not receive fair value for Costa's assets and business and will be prevented from obtaining the real value of their equity ownership in the Company. Unless the actions of Costa are enjoined by this Court, they will continue to aid and abet the Individual Defendants' breaches of their fiduciary duties owed to Plaintiff and the members of the

Class, and will aid and abet a process that inhibits the maximization of shareholder value and the disclosure of material information.

90.     Plaintiff and the other members of the Class have no adequate remedy at law.

91.     Plaintiff seeks to obtain a non-pecuniary benefit for the Class in the form of injunctive relief against Costa, Essilor, and Merger Sub.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demands equitable and injunctive relief in her favor and in favor of the Class and against Defendants jointly and severally, as follows:

(a)     declaring this action to be a class action and certifying Plaintiff as Class representative and her counsel as Class counsel;

(b)     declaring and decreeing that the Proposed Transaction was entered into in breach of the Individual Defendants' fiduciary duties and is therefore unlawful and unenforceable;

(c)     enjoining, preliminarily and permanently, the Proposed Transaction;

(d)     in the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(e)      directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(f)      awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(g)      granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Plaintiff,
By his Attorney,

Barry J. Kusinitz, Esq. #1404
155 South Main Street, Suite 405
Providence, RI 02903
Tel:    401.831.4200
Fax:    401.831.7053
E-Mail: bkusinitz@bdglawyers.com

Plaintiff Liason Counsel:
LEVI & KORSINSKY, LLP
Shannon L. Hopkins, Esq.
Sebastiano Tornatore, Esq.
733 Summer Street, Suite 304
Stamford, CT 06901
Tel:    (212).363.7500
Fax:    (866) 367.6510

DATED: 11-19-13